UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **Gerber Products Company,** <br> d/b/a Nestlé Infant Nutrition, <br><br> Plaintiff, <br><br> v. <br><br> **Tom Vilsack, in his official capacity as Secretary, United States Department of Agriculture,** *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br> Civil No. 16-cv-01696 (APM) |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

This matter is before the court on Plaintiff Gerber Products Company's Amended Motion for a Temporary Restraining Order. Plaintiff asks the court to enjoin officials of the Commonwealth of Virginia from issuing a notice that would announce Virginia's intent to award a new contract under the Women, Infants, and Children infant formula rebate procurement program. This "notice of intent" to award a contract is presently scheduled for publication on September 12, 2016, at 8:00 a.m. Plaintiff also seeks an order placing the parties back to what it contends is the *status quo ante*—*i.e.*, the time before Virginia rescinded a March 2016 notice announcing the state's original intent to award the contract to Plaintiff.

Upon consideration of Plaintiff's Amended Motion, the pleadings, the oral representations of counsel, and the evidence submitted, the court denies Plaintiff's Motion for a Temporary Restraining Order. Plaintiff has failed to demonstrate a substantial likelihood of success on the merits. Specifically, Plaintiff has not established that the court has personal jurisdiction with respect to the Virginia state officials they have sued; nor has it shown that the court has subject

matter jurisdiction under *Ex parte Young*, 209 U.S. 123 (1908), to hear their claims against those state defendants. Furthermore, because an order directed against only the federal defendants could not provide Plaintiff with its desired relief, the court concludes that Plaintiff at this juncture lacks standing to pursue its claims against the federal defendants.

## II. BACKGROUND

### A. Factual Background

The Child Nutrition Act of 1966 requires states to provide low-cost infant formula to women, infants, and young children from low-income families. *See* 42 U.S.C. § 1786; *see also* Fed. Defs.' Opp'n to Pl.'s Mot. for TRO [hereinafter Fed. Defs.' Opp'n], Ex. 1, Decl. of Sarah Widor, ECF No. 15-1 [hereinafter Widor Decl.], ¶ 7. Accordingly, the U.S. Department of Agriculture ("USDA"), through the Food and Nutrition Service, runs the Women, Infants, and Children ("WIC") program. Pl.'s Am. Mot. for TRO, ECF No. 7, Am. Mem. of P. & A. in Support of Pl.'s Am. Mot. for TRO, ECF No. 7-1 [hereinafter Pl.'s Am. Mot.], at 8. WIC provides grants to state and local agencies, which then administer the program on the local level. *Id*. State agencies that receive federal WIC grants are required to, in a way that "maximizes full and open competition," solicit bids from infant formula manufacturers for a contract to supply and provide a rebate on formulas. 7 C.F.R. § 246.16a(b)(1) (2011). The state agency is required to award the contract to the bidder that offers "the lowest total monthly net price for infant formula or the highest monthly rebate" for a standardized number of units of formula. 7 C.F.R. § 246.16a(c)(5). The company that wins the contract provides infant formula to the state agency and that formula is distributed to low-income families.

On February 8, 2016, the Virginia Department of Health ("VDH") requested bids for a contract to provide, and supply a rebate on, infant formula to be distributed to families through the

Virginia WIC program. Pl.'s Am. Mot. at 9. About six weeks later, on March 24, 2016, VDH issued a "Notice of Intent to Award" the contract to Plaintiff. Compl., ECF No. 1, Ex. 2, Notice of Intent to Award, ECF No. 1-10. A few days later, on April 1, 2016, the Notice of Intent to Award to Plaintiff was posted publicly on a state-run website. *Id.* ¶ 50. On April 4, 2016, Abbott—a competitor of Plaintiff—filed a protest with VDH challenging the decision to award the contract to Plaintiff, arguing that VDH had used an incomplete and incorrect calculation to determine which company's price was lower. Widor Decl. ¶ 14.

In the following days, Virginia officials communicated with USDA officials about Abbott's challenge (the "USDA-VDH emails"). *See generally* Compl., Ex. 1, Email Correspondence between USDA and VDH, ECF No. 1-9 [hereinafter USDA-VDH Emails]. The USDA officials "provided technical assistance," "shared regulatory language," and participated in a phone call to discuss the relevant regulatory requirements. Widor Decl. ¶ 15. One USDA official emailed the Virginia officials links of relevant regulations as well as the language of the preamble to those regulations, describing them as "the background for [the Food and Nutrition Services'] interpretation" of how to calculate the cost of a prospective infant formula contract. *See* USDA-VDH Emails, at 7-9. Following these communications, on April 11, 2016, VDH reopened the bidding for the infant formula contract "due to missing data" and informed Plaintiff of its decision. *Id.* at 12-14; *see also* Compl., Ex. 3, Notice of Cancellation of Intent to Award, ECF No. 1-11. Plaintiff challenged VDH's decision soon thereafter. Compl., Ex. 4, Notice of Protest and Cease and Desist, ECF No. 1-12; *see also* Compl., Ex. 5, Gerber Protest to VDH (Apr. 20, 2016), ECF No. 1-13.

B.     **Procedural Background**

On May 2, 2016, VDH rejected Plaintiff's protest on the grounds that Plaintiff had not challenged an "award" but rather a decision *not* to award a contract. *See generally* Compl., Ex. 8, Contracting Officer Final Decision (May 2, 2016), ECF No. 1-16. VDH also asserted that it had cancelled the procurement to fix errors in the method of calculation, rather than to avoid providing the contract to Plaintiff. *Id*. at 3. A week later, Plaintiff filed a supplemental protest with VDH, *id.*, Ex. 10, Gerber Supplemental Protest, ECF No. 1-18, which was denied on June 10, 2016, *id.*, Ex. 11, Contracting Officer Final Decision (June 10, 2016), ECF No. 1-19.

Contemporaneously, Plaintiff filed suit in the state Circuit Court in Richmond, Virginia, challenging VDH's denial of Plaintiff's protest. Pl.'s Am. Mot. at 20. On July 7, 2016, the Circuit Court ruled in favor of Virginia, finding that, under Virginia law, Plaintiff could not challenge the decision to rescind the contract award (as opposed to challenging the award of a contract itself, which would be a cognizable claim). *See* Fed. Defs.' Opp'n, Ex. 2, Circuit Court of the City of Richmond Decision, ECF No. 15-2.

On August 1, 2016, VDH re-solicited bids for the contract, asking that all bids be submitted by August 31, 2016. Compl. ¶ 104. Plaintiff requested that VDH delay the due date pending judicial review, and VDH agreed not to issue a notice of intent to award until September 12, 2016. Plaintiff brought an action in this court on August 19, 2016, against both USDA officials ("Federal Defendants")[1] and Virginia state officials ("Virginia Defendants").[2] *See generally* Compl.; *see*

---

[1] The Federal Defendants are Tom Vilsack, in his official capacity as Secretary of USDA; Audrey Rowe, in her official capacity as Administrator of USDA's Food and Nutrition Service; and, Kevin C. Concannon, in his official capacity as Undersecretary for Food and Nutrition and Consumer Services.

[2] The Virginia Defendants are Marissa J. Levine, in her official capacity as State Health Commissioner, Virginia Department of Health; Michael Welch, in his official capacity as Director, Virginia Department of Health; Steven Voncanon, in his official capacity as Director, Office of Purchasing and General Services, Virginia Department of Health; and David Jesse Huertas, in his official capacity as Procurement Officer II, Office of Purchasing and General Services, Virginia Department of Health.

*also generally* Mot. for TRO, ECF No. 3.  Plaintiff requested a Temporary Restraining Order that, among other things, enjoins the issuance of a new intent to award and reinstates the notice of contract award to Plaintiff.  *See generally* Compl.; *see also generally* Mot. for TRO.  One week later, on August 26, 2016, Plaintiff amended its request for a TRO.  *See generally* Pl.'s Am. Mot.  As the basis for its request for a TRO, Plaintiff argues that the USDA-VDH emails show that USDA unlawfully compelled VDH to reopen the bidding.  Pl.'s Am. Mot. at 25.

### III.    LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary and drastic remedy" that is "never awarded as [a matter] of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations and internal quotation marks omitted).  A court may only grant the "extraordinary remedy . . . upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  Specifically, a plaintiff must show: (1) that it "is likely to succeed on the merits"; (2) that it "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in [its] favor"; and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

Courts in this Circuit traditionally have evaluated these four factors on a "sliding scale"—if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009).  The Supreme Court's decision in *Winter*, however, called that approach into doubt and sparked disagreement over whether the "sliding scale" framework continues to apply, or whether a movant must make a positive showing on all four factors without discounting the importance of a factor simply because one or more other factors

have been convincingly established. *Compare Davis v. Billington,* 76 F. Supp. 3d 59, 63 n.5 (D.D.C. 2014) ("[B]ecause it remains the law of this Circuit, the Court must employ the sliding-scale analysis here."), *with ABA, Inc. v. District of Columbia,* 40 F. Supp. 3d 153, 165 (D.D.C. 2014) ("The D.C. Circuit has interpreted *Winter* to require a positive showing on all four preliminary injunction factors." (citing *Davis v. Pension Benefit Guaranty Corp.,* 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring))).

Here, the court need not decide to what extent the "sliding scale" has survived *Winter*, because the court concludes that Plaintiff has not met its burden on the first element— demonstrating a substantial likelihood of success on the merits.

## IV. DISCUSSION

Both the Virginia and Federal Defendants present a number of arguments regarding Plaintiff's inability to succeed on the merits. The court does not address them all. As for the Virginia Defendants, the court need only address: (1) whether Plaintiff has established that this court has personal jurisdiction over the Virginia Defendants, and (2) whether the Virginia Defendants are protected from suit by sovereign immunity. With respect to the Federal Defendants, the court need only address whether Plaintiff has standing to assert the claims against them.

### A. The Virginia Defendants

#### 1. Personal Jurisdiction

The Virginia Defendants argue that this court lacks personal jurisdiction over them and therefore the court cannot grant the injunctive relief that Plaintiff seeks. Virginia Defs.' Opp'n to Pl.'s Am. Mot. for a TRO, ECF No. 14 [hereinafter Va. Defs.' Opp'n], at 9. The court must address the Virginia Defendant's jurisdictional challenge before it can proceed to the merits of Plaintiff's

claims. *See Foras v. Rauf*, 812 F.3d 1102, 1105-06 (D.C. Cir. 2016) (holding that the district court must consider a challenge to personal jurisdiction before considering the merits of a claim). Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of alleging specific facts on which personal jurisdiction can be based. *See Naartex v. Consulting Corp. v. Watt*, 722 F.2d 779, 787-88 (D.C. Cir. 1983). It cannot rely on "conclusory statements and intimations." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000). This court has personal jurisdiction over the Virginia Defendants only if (1) jurisdiction can be obtained under the District of Columbia's long-arm statute, and (2) a finding of jurisdiction satisfies the constitutional requirements of due process. *See id.* at 1347. Here, Plaintiff does not satisfy either requirement.

Plaintiff contends that this court can exercise jurisdiction over the Virginia Defendants under the "transacting business" prong of the D.C. long-arm statute. Pl.'s Reply to Defs.' Opp'n, ECF No. 16 [hereinafter Pl.'s Reply], at 21 (citing D.C. Code § 13-423(a) (2016)). More specifically, Plaintiff asserts that "[t]he [Virginia] Defendants purposefully availed themselves of the privilege of conducting activities in the District," as evidenced by the email communications between the Virginia state officials and USDA officials concerning the procurement process. *Id.*

Plaintiff's argument, however, runs head long into the "government contacts" exception to the "transacting business" provision of the D.C. long-arm statute. *See Jenkins v. Kerry*, 928 F. Supp. 2d 122, 133 (D.C. Cir. 2013). The government contacts exception provides that "a defendant's relationships with federal agencies do not enter the calculus of minimum contracts with the District of Columbia for jurisdictional purposes." *Id*. (citations omitted); *see also Fuentes-Fernandez & Co. v. Caballero & Castellanos, PL, PSC*, 770 F. Supp. 2d 277, 281 ("Under [the government contacts] exception, certain contacts with the federal government—such as

7

meeting with federal officials in Washington, D.C., or receiving federal funding—are insufficient to establish personal jurisdiction.") (citations omitted); *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) ("To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.").

Here, the email communications between Virginia and federal officials are "uniquely governmental activities." *Fuentes-Fernandez*, 770 F. Supp. 2d at 281 (citation omitted). Indeed, this case is much like *Fuentes-Fernandez*, where the plaintiff attempted to sue Louisiana state housing officials in this District Court, when the defendant's only contacts with the District of Columbia were their interactions with federal officials concerning a federal program. *Id.* As the court in *Fuentes-Fernandez* concluded, such contacts "are exempt from the D.C. long-arm statute and are insufficient, as a matter of law, to establish personal jurisdiction." *Id.* Accordingly, the court finds that it lacks personal jurisdiction over the Virginia Defendants and thus Plaintiff has failed to establish a substantial likelihood of success in this court.[3]

   2.   *Sovereign Immunity*

The court's lack of personal jurisdiction is not the only jurisdictional bar affecting Plaintiff's suit against the Virginia Defendants. The Eleventh Amendment protects States against being "sued in federal court unless they consent to it in unequivocal terms or unless Congress,

---

[3] At oral argument, Plaintiff argued that circumstances similar to those in *Ex parte Young*, 209 U.S. 123 (1908)—where a plaintiff challenged a state official's ongoing compliance with federal law—would justify the exercise of personal jurisdiction over an out-of-state official. But, as discussed below, *Ex parte Young* is a limited exception to sovereign immunity, and does not concern personal jurisdiction. If Plaintiff's argument were accepted, it would mean that this District Court almost always would have jurisdiction over out-of-state officials in *Ex parte Young*-type cases, which are not uncommon. But that consequence is squarely at odds with the rationale of the government contacts exception, which is to not haul persons into court in the District of Columbia simply because of their contacts with the federal government.

8

pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citation omitted). That protection from suit extends to state officials acting in their official capacities. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). *Ex parte Young* created an exception to this principle—namely that "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). Plaintiff solely relies on *Ex parte Young* in its attempt to avoid the sovereign immunity bar. *See* Pl.'s Am. Mot. at 23; Pl.'s Reply at 18.

In determining whether *Ex parte Young* applies, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). Plaintiff's request for injunctive relief satisfies neither of those prongs. With respect to the first, Plaintiff is unable to show an "ongoing violation of federal law." Plaintiff alleges that USDA "directed [Virginia]'s actions" and "usurped the role of [Virginia]," thereby violating 7 C.F.R. § 246.24(b), a USDA regulation concerning state WIC procurements.[4] Pl.'s Reply at 9-11. But, even assuming USDA did unlawfully direct VDH to rescind the original notice of award to Plaintiff, Plaintiff has alleged no more than a one-time violation, rather than an "ongoing" violation, of the federal regulation. The Virginia Defendant's allegedly unlawful rescission of the original notice of intent took place at a discrete point in time in April 2016. *See generally* USDA-VDH Emails. There is nothing on this record that establishes a recurring violation of USDA regulations beyond that point. That Plaintiff is still, months later,

---

[4] The parties have differing views about the meaning of 7 C.F.R. § 246.24(b)—specifically, whether the regulation bars the USDA from interfering with state procurement—but the court need not resolve that dispute.

adversely impacted by the allegedly unlawful act does not make it an ongoing violation of federal law.

As for the second prong, while Plaintiff does seek some prospective injunctive relief—enjoining Virginia from announcing a new notice of intent to award—the gist of its request is for retroactive relief. Specifically, Plaintiff asks the court to enjoin the "Virginia Defendants . . . from cancelling and resoliciting [the infant formula contract] and rescinding their March 25, 2016 notice of intent to award to Gerber pending the resolution of this action on the merits." Pl.'s Am. Proposed Order, ECF No. 7-4, at 5. At bottom, what Plaintiff asks this court to do is reverse Virginia's decision to rescind the notice of award to Plaintiff. That type of backwards-looking relief is inconsistent with the limited exception to state sovereignty carved out by *Ex parte Young*. As a result, the Virginia Defendants are protected by state sovereignty and, for that reason, Plaintiff has failed to demonstrate a substantial likelihood of success.

### B. The Federal Defendants

Having determined that Plaintiff cannot show a substantial likelihood of success on the merits with respect to the Virginia Defendants, the court now turns to Plaintiff's claims against the Federal Defendants. The court finds, however, that Plaintiff does not have standing to assert those claims.

The "irreducible constitutional minimum of standing" requires that a plaintiff demonstrate three elements: (1) injury in fact; (2) causation; and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In other words, to establish standing, Plaintiff "must state a plausible claim that [it has] suffered an injury in fact fairly traceable to the actions of [the Federal Defedants] that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (citing *Humane Soc'y of the U.S. v.*

*Vilsack,* 797 F.3d 4, 8 (D.C. Cir. 2015)). A party, as here, seeking injunctive relief must show a "substantial likelihood" that it has standing; if the party fails to do so, it is not entitled to an injunction. *Food & Water Watch*, 808 F.3d at 913 (citation and internal quotations omitted).

When "[t]he existence of one or more of the essential elements of standing"— in this case, redressability—"'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,'" it becomes "'substantially more difficult' to establish" standing. *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 2016 WL 4608153, at *5 (D.C. Cir. Sept. 6, 2016) (citing *Defs. of Wildlife*, 504 U.S. at 562). That is precisely the situation presented here. The redress that Plaintiff seeks depends entirely on the Virginia Defendants' presence in this case. But the court has concluded that it lacks jurisdiction over the Virginia Defendants. Their absence means that injunctive relief can be directed only against the Federal Defendants, who do not control the state procurement process, and therefore, the relief would do nothing to redress Plaintiff's alleged injury. No order directed against the Federal Defendants alone could cure the harm claimed by Plaintiff. Therefore, Plaintiff lacks standing to sue the Federal Defendants.

V.  **CONCLUSION**

For the foregoing reasons, the court denies Plaintiff's Amended Motion for a Temporary Restraining Order. A separate order accompanies this Memorandum Opinion.

Dated: September 9, 2016

Amit P. Mehta
United States District Judge