# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **GERBER PRODUCTS COMPANY,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 16-cv-01696 |
| **SONNY PERDUE, et al.,** | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This lawsuit arises out of a disputed contract to supply infant formula in the Commonwealth of Virginia under the federal Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC"). Overseen by the U.S. Department of Agriculture ("USDA"), the WIC program provides grants to state agencies to fund food benefits and other related services to low-income women and children. In the spring of 2016, the Virginia Department of Health ("VDH") issued a notice of Intent to Award a contract for the supply of infant formula to Plaintiff Gerber Products Company. Plaintiff's competitor, Abbott Nutrition, challenged that preliminary award, claiming that VDH had evaluated the competing bids using the wrong data. VDH consulted with USDA officials, who agreed that state officials had relied on incomplete data when initially awarding the contract to Plaintiff. VDH then re-opened the bid process and ultimately awarded the contract to Abbott Nutrition.

Plaintiff believes it lost the Virginia infant formula contract because of the USDA's actions. Plaintiff claims that the USDA gave advice to VDH that was at odds with the agency's positions in other state procurements and directed VDH to rescind the Intent to Award and re-open

the bid process. Plaintiff now brings suit to prevent such events from happening again. Plaintiff asks the court to issue an order requiring the USDA "to clarify and consistently apply guidance on required data to be included in State WIC solicitations" and "to cease providing inconsistent or disparate direction or advice regarding data requirements for State WIC infant formula procurements." Although Plaintiff paints a sympathetic picture, the court cannot grant the relief it seeks. As explained below, Plaintiff both lacks standing to bring suit and fails to challenge a final agency action under the Administrative Procedure Act. For those reasons, the court grants Defendants' Motion to Dismiss. The court also denies Plaintiff's request for leave to take discovery.

## I. BACKGROUND

### A. Factual Background

The U.S. Department of Agriculture ("USDA"), through its sub-component, the Food and Nutrition Service, runs the Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC"). Am. Compl., ECF No. 24 [hereinafter Am. Compl.], ¶ 29. WIC is funded by the USDA but is administered by state agencies. *Id.* ¶¶ 29–30. Under the program, the federal government provides grants to states, which in turn provide "supplemental foods and nutrition education" to qualifying low-income women and children. Child Nutrition Act, 42 U.S.C. § 1786; Am. Compl. ¶¶ 29–30.

One of the products the WIC program provides is infant formula. *See* 42 U.S.C. § 1786(f)(15). Under the statutory scheme, states are required to administer a competitive bidding process, or similar cost containment system, in which companies bid to secure exclusive contract rights to provide infant formula to that state. *Id.* § 1786(h)(8)(A)(i). The USDA's regulations, generally speaking, require states to use a "single-supplier competitive system," whereby state

WIC agencies "solicit[] sealed bids from infant formula manufacturers to supply and provide a rebate for infant formulas." 7 C.F.R. § 246.16a(b)(1) (2011). The prevailing manufacturer gives the state agency a rebate for each unit of formula purchased by WIC participants in exchange for an exclusive supplier contract. 42 U.S.C. § 1786(b)(17), (18).

In the spring of 2016, the Commonwealth of Virginia's WIC agency, the Virginia Department of Health ("VDH"), announced an Intent to Award its WIC infant formula contract to Plaintiff. Am. Compl. ¶ 41. Plaintiff's competitor, Abbott Nutrition, challenged VDH's decision, arguing that VDH had used incorrect data to determine the lowest bidder. *Id.* ¶ 44. According to Abbott Nutrition, VDH incorrectly used estimates of infants consuming only milk-based formula, when it should have included infants using soy-based and milk-based lactose free infant formula. *Id.*

Virginia WIC Director Michael Welch sought guidance from the USDA following Abbott Nutrition's protest. Welch e-mailed a group of USDA officials to ask whether the USDA's regulations required state agencies to consider all participating infants in evaluating bids, or just those using milk-based formula. *Id.* ¶¶ 47–49. The Food and Nutrition Service's WIC branch chief for the Mid-Atlantic Region, Jaime Van Lieu, informed Welch that the USDA's regulations required, for bidding purposes, an estimate of all participating infants, except those who are breastfeeding or prescribed exempt formulas. *Id.* ¶ 49; Compl., ECF No. 1 [hereinafter Compl.], Ex. 1, ECF No. 1-9 [hereinafter Pl.'s Ex. 1], at 7–9. Van Lieu admitted the regulations were ambiguous, but pointed to preambles to the relevant rules to support her conclusion, noting that "USDA's legal folks typically reference preambles when there is vagueness in the regs." Pl.'s Ex. 1 at 9. Van Lieu also reported that a recent winning bid from another state in her region, Pennsylvania, included all non-exempt infants that receive formula. *Id.* Following this exchange,

3

VDH canceled its Intent to Award the contract to Plaintiff "due to missing data," reopened bidding, and thereafter awarded the contract to Abbott Nutrition. Am. Compl. ¶¶ 51, 53, 88–89.

### B. Procedural Background

Plaintiff challenged VDH's revocation of its Intent to Award at every turn. At the start, Plaintiff sent a letter to VDH protesting the revocation and sent a copy to the USDA. Am. Compl. ¶¶ 54–55, 61. The USDA deferred to VDH, and VDH, in turn, rejected the protest on the ground that Plaintiff could not challenge VDH's decision *not* to award a contract. Compl., Ex. 8, ECF No. 1-16; Am. Compl. ¶¶ 67–68. Plaintiff's subsequent administrative protests also proved unsuccessful. Compl., Ex. 11, ECF No. 1-19; Am. Compl. ¶¶ 75, 90. Plaintiff also twice sued VDH in Virginia state court—first, after VDH announced the re-bid, and then again after it awarded the contract to Abbott Nutrition—only to see VDH prevail in both cases. Am. Compl. ¶¶ 84, 93–94.

In September 2016, Plaintiff brought suit in this court against both federal and VDH officials, seeking a temporary restraining order ("TRO") enjoining VDH officials from announcing a new bid solicitation and requiring them to re-instate the original Intent to Award to Plaintiff. This court denied the motion for a TRO, finding that it lacked both personal jurisdiction over the Virginia state officials and subject matter jurisdiction to hear the claims against them. *Gerber Prod. Co. v. Vilsack*, No. 16-1696, 2016 WL 4734357, at *1 (D.D.C. Sept. 9, 2016). The court also held that, because it could not order the federal officials to grant the requested injunctive relief, Plaintiff lacked standing to sue them. *Id.*

Having failed to recapture the Virginia contract, Plaintiff embarked on a different strategy. It voluntarily dismissed the Virginia state officials from this suit, *see* Notice of Voluntary Dismissal, ECF No. 21, and then filed an Amended Complaint solely against USDA officials

("Defendants").[1] The Amended Complaint alleges that the USDA violated the Administrative Procedure Act ("APA") (1) by treating the Virginia procurement differently than similarly situated state procurements, and (2) by violating its own regulations when it directed VDH to re-open bidding. Am. Compl. ¶¶ 109–23. As to its first APA claim, Plaintiff alleges that the USDA has not acted consistently when it comes to intervening in various states' infant formula procurements. *Id.* ¶¶ 109–13. Plaintiff points to a host of other instances in which state agencies awarded contracts based on the same purportedly deficient data that Plaintiff submitted to VDH, without any corresponding demand from the USDA to re-open bidding. *Id.* ¶¶ 95–102. As to its second APA claim, Plaintiff contends that the USDA violated its own regulations when it "usurped the role of the VDH procurement officer and improperly directed cancellation" of the Intent to Award. *Id.* ¶ 118. To remedy these alleged violations, Plaintiff asks the court to order the USDA "to clarify and consistently apply guidance on required data to be included in State WIC solicitations" and "to cease providing inconsistent or disparate direction or advice regarding data requirements for State WIC infant formula procurements." *Id.* at 31.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiff's Amended Complaint on several grounds. First, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, they contend that the court is without subject matter jurisdiction to hear Plaintiff's claims because Plaintiff lacks Article III standing. Defs.' Mot. to Dismiss, ECF No. 25, Mem. in Supp., ECF No. 25-1 [hereinafter Defs.' Mot.], at 9–18. Second, under Rule 12(b)(6), Defendants argue that Plaintiff has not met the threshold requirement for challenging agency action under the APA because the action Plaintiff seeks to

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes as defendants Sonny Perdue, in his official capacity as Secretary of Agriculture, for former Secretary of Agriculture, Tom Vilsack; and Jessica Shahin, in her official capacity as Acting Administrator of the USDA's FNS, for former FNS Administrator, Audrey Rowe.

5

challenge is neither "agency action," under 5 U.S.C. § 702, nor "final," under 5 U.S.C. § 704. Defs.' Mot. at 8, 19–26. Third, also under Rule 12(b)(6), Defendants argue that Plaintiff fails to state a claim under the APA because (1) the regulation the USDA allegedly violated is an indemnity provision and does not impose any liability or duty on the USDA; and (2) Plaintiff did not sufficiently plead facts showing that the USDA treated similar state procurements differently. *Id.* at 26–36.

### A. Dismissal for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true. *Jerome Stevens Pharm., Inc. v. Food & Drug Admin*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005). "The plaintiff bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

When ruling on a Rule 12(b)(1) motion in which the defendant challenges the plaintiff's standing to assert a claim, a federal court must presume that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)). The burden of establishing the elements of standing "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff must establish standing "for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).

### B. Dismissal for Failure to State a Claim Under Rule 12(b)(6)

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Browning*

*v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When assessing a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.*; *Arpaio*, 797 F.3d at 19. The court is not required, however, to assume the truth of legal conclusions or accept inferences that are not supported by the facts set out in the complaint. *Iqbal*, 556 U.S. at 678; *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. If a complaint lacks sufficient facts to "state a claim to relief that is plausible on its face," then the court must dismiss it. *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Arpaio*, 797 F.3d at 19.

## III. DISCUSSION

### A. Standing

The court begins, as it must, with whether Plaintiff has standing. A plaintiff has standing when she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ___, ___, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–

61). Because Plaintiff has not met its burden of establishing the first element of injury in fact, the court need not address the other two.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (footnote, citations, and internal quotation marks omitted). When, as here, a plaintiff seeks declaratory or injunctive relief, the plaintiff's burden in establishing injury is "significantly more rigorous." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015); *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Plaintiff "must show he is suffering an ongoing injury *or* faces an immediate threat of injury." *Dearth*, 641 F.3d at 501 (emphasis added). A potential future injury must be "certainly impending"; the mere possibility of such injury is not enough. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, ___ , 133 S. Ct. 1138, 1147 (2013).

Plaintiff claims both ongoing and future injuries. Plaintiff alleges ongoing injury in the form of "great uncertainty and [an] un-level playing field" arising from the USDA's inconsistent approach to advising state WIC officials and intervening in state bid processes. Am. Compl. ¶ 103; *see also* Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 27, at 15 ("[Plaintiff] is unable to predict how future [state] procurements will be conducted"); Oral Arg. Tr. (rough draft) [hereinafter Tr.] at 34 (describing injury as "a combination of the confusion, the expense, and then the inconsistent direction from USDA"). Plaintiff also contends that it faces an immediate threat of two, related future injuries. First, Plaintiff asserts that it may lose future bids as a result of the USDA's "improper[] and inconsistent[]" interference with state-level procurement processes. Pl.'s Opp'n at 18; Tr. at 34–36. Second, Plaintiff alleges that it "will be forced to file state-level protests in each State WIC procurement until USDA complies with and consistently interprets its own

8

regulations." Am. Compl. ¶ 108. None of these alleged injuries satisfies the injury-in-fact requirement.

Plaintiff's claimed ongoing injuries—"great uncertainty" as to future state procurements and "an un-level playing field"—do not support Article III standing. Business uncertainties that arise from regulatory decisions are not the kind of concrete and particularized injuries sufficient to establish an injury in fact. As Judge Huvelle put it in *ViroPharma, Inc. v. Hamburg*: "[U]ncertainties regarding the future regulatory and competitive environment . . . . are highly nebulous in both character and degree," and for that reason cannot satisfy the injury-in-fact requirement. 777 F. Supp. 2d 140, 147 (D.D.C. 2011) (internal quotation marks omitted), *aff'd*, 471 F. App'x 1 (D.C. Cir. 2012); *see also Mylan Pharm. Inc. v. U.S. Food & Drug Admin.*, 789 F. Supp. 2d 1, 10 (D.D.C. 2011) (holding that alleged harm from agency inaction that impacted immediate business decisions was insufficient to establish standing).

Moreover, Plaintiff's claimed confusion about data requirements is, in a sense, of its own making. If a plaintiff can easily remedy such purported harm by seeking clarification from an agency, but has not done so, then the plaintiff cannot claim to suffer from an injury in fact for purposes of standing. *See Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). Here, there is an easy solution to "alleviat[e] the alleged uncertainty." *Id.* Plaintiff can simply ask the USDA: What information must be included in bids for infant formula contracts under the WIC program? *See id.* (holding the plaintiff lacked standing where "[i]t could inquire of [the agency] exactly how the agency proposes to resolve any of the conflicts that it claims to spot between the amendment and the regulations," but did not do so). Plaintiff has neither directly posed that question to the USDA nor formally petitioned the agency

pursuant to 5 U.S.C. § 553(e) for a rule clarifying the bidding requirements.[2] As Plaintiff has "chosen to remain in the lurch, it cannot demonstrate an injury sufficient to confer standing." *Id.*[3]

Plaintiff heavily relies upon *National Law Party of the United States v. Federal Election Commission* to support its claim that it suffers from ongoing injury. *See* Pl.'s Opp'n at 15–16 (citing and discussing 111 F. Supp. 2d 33 (D.D.C. 2000)). That reliance is misplaced. In *National Law Party*, the plaintiffs, a minor political party and its candidates who were excluded from participating in the 1996 presidential and vice-presidential debates, sought review of the Federal Election Commission's decision to dismiss its administrative complaint challenging the criteria by which the Committee on Presidential Debates selects participants. 111 F. Supp. 2d at 36. Even though the election at issue had long since passed, the court held that plaintiffs still had standing because they suffered "continuing adverse effects" from the agency's action, because the plaintiffs would be unable "to compete on an equal footing" with the major political parties in future national elections. *Id.* at 43–44. No similar ongoing injury exists here. The USDA's past inconsistencies, even if true, do not foretell its future conduct. And, even if the USDA continues to act in a haphazard fashion, there is no reason to believe that its actions will affect a future state-level award or work to Plaintiff's detriment. In other words, unlike in the case of repeated application of selection criteria, the court has little reason to believe that the factual circumstances that led to the

---

[2] Plaintiff did send a letter to the USDA in April 2016 concerning the Virginia 2016 bid process, but the letter did not ask the USDA to explain what data must be included when bidding for state WIC procurements of infant formula. Compl., Ex. 6, ECF No. 1-14 [hereinafter Pl.'s Ex. 6]. Rather, in somewhat alarmist fashion, Plaintiff demanded that the USDA stay all state procurements "given the substantial uncertainty arising from" the Virginia 2016 contract award. *Id.* at 2. The letter does not ask the USDA to clarify regulatory requirements, nor does it constitute a formal request under 5 U.S.C. § 553(e).
[3] At oral argument, Plaintiff's counsel represented that Plaintiff has asked various states about what data is required in bids and has received inconsistent answers. Tr. at 31, 33. Even if that is so, it is hard to see how Plaintiff is injured by inconsistencies across states when what matters for securing the state contract is how the program operates in each particular state.

USDA's actions in the Virginia procurement will be repeated and, even if they are, it would be entirely speculative for the court to conclude that Plaintiff will be harmed as a result.

Plaintiff's claims of future injury fare no better as they, too, are wholly speculative. The following chain of events would have to occur before the agency's actions could be causally connected to Plaintiff's claimed future injuries of lost WIC infant formula contracts and associated costs: (1) Plaintiff is unable to determine in advance the proper data requirements for a state WIC infant formula procurement; (2) Plaintiff's competitor submits the proper data, either on its own or after the USDA intervenes; (3) Plaintiff's bid is rendered less competitive due to either the USDA's intervention as to a competitor's bid or inconsistent positions given to Plaintiff about data requirements; (4) Plaintiff loses the contract; (5) Plaintiff's loss is due to the uncertainty over data requirements or the USDA's intervention, and not for some other valid reason; and (6) Plaintiff does not prevail in a bid protest or on a rebid. Several of these steps are not only uncertain, but also entirely speculative. Uncertainty and speculation cannot hold together "the chain to connect the challenged acts to the asserted particularized injury." *Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996). Those links are rendered even more attenuated because they depend on the actions of a third party—the state WIC agency—that has primary control over the procurement process. *See Cierco v. Mnuchin*, No. 16-5185, 2017 WL 2231107, at *9 (D.C. Cir. May 23, 2017) ("We are particularly disinclined to endorse standing theories that rest on speculation about the decisions of independent actors." (internal quotation marks omitted)); *see also Arpaio*, 797 F.3d at 21 ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) . . . ."). Plaintiff, therefore, falls short of demonstrating a future injury that is "certainly impending." *See Clapper*, 133 S. Ct. at 1147.

As before, Plaintiff relies heavily on a single case—this time, *Dearth v. Holder*—to establish future injury, but that case offers no help. *See* Pl.'s Opp'n at 16–17 (citing and discussing 641 F.3d 499 (D.C. Cir. 2011)). In *Dearth*, the plaintiff challenged a statute and regulations that prohibited anyone living outside the United States from purchasing a firearm in the United States. 641 F.3d at 500. The D.C. Circuit held that the plaintiff, a U.S. citizen living in Canada who twice had attempted to buy a firearm in the United States but was denied, demonstrated imminent future injury by declaring his intent to both return to the United States to visit family and friends and to purchase a firearm, which he would store with his family. *See id.* at 502–03. The difference between *Dearth* and this case is obvious: the former involves a "certainly impending" injury while the facts presented here do not. The future injury in *Dearth* was certain to occur because the challenged law would undeniably prevent the plaintiff from purchasing a firearm the next time he traveled to the United States, whereas here the claimed injury depends on too many variables, including the unknowable actions of the state WIC agencies. Accordingly, Plaintiff lacks standing based on claimed imminent future injury.[4]

### B. Whether Agency Action is Reviewable Under the APA

Plaintiff's suit fails for another reason—it does not allege a reviewable "final agency action."[5] For an agency action to be "final," and therefore reviewable under the APA, it must (1) "mark the consummation of the agency's decisionmaking process"—in other words, it cannot be "tentative or interlocutory"—and (2) determine "rights or obligations" or have "legal

---

[4] Plaintiff also argues that even if it did not allege sufficient injury, Plaintiff has standing because the USDA's conduct is "capable of repetition, yet evading review." Pl.'s Opp'n at 18–19 (quoting *Kingdomware Techns., Inc. v. United States*, 579 U.S. ___, ___, 136 S. Ct. 1969, 1976 (2016)). However, the doctrine Plaintiff invokes is designed to help a party avoid dismissal for *mootness* when it had standing at the time the complaint was filed but circumstances have changed and relief is no longer available. *See Cierco*, 2017 WL 2231107, at *5. That is not the case here.

[5] Defendants also argue that Plaintiff has not alleged an "agency action," let alone a "final agency action." Defs.' Mot. at 19–22. Because the court finds that the requirement of finality is clearly absent, it need not decide whether the challenged conduct meets the definition of "agency action" under the APA.

consequences." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted). The APA does not allow for review of "generalized complaints about agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006).

Plaintiff challenges two claimed "final" agency actions. The first is the USDA's alleged provision of inconsistent direction concerning bid data to state WIC programs. *See* Pl.'s Opp'n at 26 (challenging "USDA's disparate direction to State WIC agencies regarding the data to be included on bid sheets in specific procurements, and USDA specific and discrete direction to state WIC agencies to cancel or award WIC contracts in violation of its own regulations" (citing Am. Compl. ¶¶ 2, 95–108)). The second is the USDA's "improper[] interfer[ence]" in state WIC contract awards. *Id.* at 28 ("USDA is improperly interfering in State WIC procurements and is inconsistently and improperly insisting on the inclusion of certain data in some procurements but not in others.").

The USDA's provision of "disparate direction" to various states does not constitute final, reviewable agency action. Plaintiff points to six states that have awarded WIC infant formula contracts, without USDA-mandated re-bidding, even though the winner's bid lacked the same type of data as Plaintiff's failed Virginia bid. Am. Compl. ¶¶ 96–101. Plaintiff argues that the USDA's decision not to require those states to re-open bidding on their procurements, when combined with the agency's contrary directive to do so in Virginia, constitutes final agency action. *Id.* That just is not so. Plaintiff cannot point to a series of *state* agency actions—the WIC procurements—with no obvious connection to *federal* action, and declare the USDA's decision *not to act* in those instances to be "final [federal] agency action" within the meaning of the APA. The only common thread alleged among the state procurements (including Virginia) is general oversight by the USDA. Nowhere does Plaintiff allege that there was any confusion in any of the other six state

13

procurements about bidding data requirements. Nor does Plaintiff allege any communication about data requirements between the USDA and any of the six state agencies. Plaintiff's effort to transform federal inaction in factually dissimilar situations into final agency action here fails.

Moreover, the notion that giving inconsistent direction to state agencies is the "consummation" of the USDA's decision-making process is implausible. It is far more plausible that any difference in advice is due to diffuse administration of the WIC program at the regional level by lower-ranking officers. *See* Tr. at 14–15 (explaining that the USDA administers the WIC program through the regional offices of its sub-component, the Food and Nutrition Service). That is what happened in the case of the Virginia bid. The WIC branch chief for the Mid-Atlantic region, Jaime Van Lieu,[6] conveyed via e-mail her personal interpretation of relevant regulations to Virginia officials. *See* Pl.'s Ex. 1 at 7–9 (stating that "[i]t is my understanding" that "USDA's legal folks" will rely on the preamble to a rule to interpret vagueness in a regulation). Guidance supplied by a lower-level official generally does not qualify as a "final" agency action, even if it proves influential. *See Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992); *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 669–70 (D.C. Cir. 2016). Thus, the fact that VDH officials accepted Van Lieu's interpretation and Plaintiff lost a contract as a result does not convert the e-mail into a final agency action.

The second supposed final agency action—the USDA's improper interference in state WIC awards—suffers from the exact same flaws as the first. At most, any action by USDA officials appears to reflect diffuse decision-making among subordinate actors, rather than the formal consummation of an agency's decision-making process.

---

[6] Defendants' counsel represented at oral argument that Van Lieu reports to the regional WIC director, who reports to the regional administrator, who reports to the Food and Nutrition Service's headquarters in Washington, D.C. Tr. at 12.

Finally, neither of the challenged actions determines legal rights or obligations. Courts "lack[] authority to review claims where an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004). That is all that occurred here. A subordinate official at the USDA expressed her view on what the agency's regulations require, and VDH accepted that view. That advice did not determine legal rights or obligations for any party, including Plaintiff. Accordingly, because Plaintiff has not alleged a final agency action, it has failed to state a claim under the APA.[7]

### C. Plaintiff's Motion for Discovery

Plaintiff seeks "jurisdictional" discovery and a second opportunity to amend its complaint. Pl.'s Opp'n at 39–40; Pl.'s Reply to Defs.' Opp'n to Pl.'s Alternative Mot. for Leave to Take Discovery and File a Second Am. Compl., ECF No. 31 [hereinafter Pl.'s Reply], at 5. To the extent Plaintiff seeks jurisdictional discovery to show that the USDA's actions are final agency action—*see* Pl.'s Reply at 12–13; Tr. at 29, 39–40—that request is improper because finality is not a "jurisdictional" element of an APA claim. Pl.'s Reply at 12–13; *see Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006). Additionally, to the extent Plaintiff requests jurisdictional discovery to establish standing, its request also fails because no amount of discovery will cure Plaintiff's lack of injury. *Cf. Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005). The court therefore denies Plaintiff's request for discovery.

---

[7] Because the court finds that Plaintiff has failed to satisfy the "threshold" showing of a "final agency action," it need not address the merits of Defendants' remaining arguments for dismissal under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to Dismiss and denies Plaintiff's Motion for Leave to Take Discovery and File a Second Amended Complaint. A separate Order accompanies this Memorandum Opinion.

Dated: May 30, 2017

Amit P. Mehta
United States District Judge